16005

STATE v. JONES
(44 S. E. (2d) 841)

Mr. *John M. Scott,* for Appellant,

Mr. *J. Reuben Long,* Solicitor, of Conway, for Respondent,

November 5, 1947.

STUKES, J.: This appeal is from conviction at the January, 1947, term of the Court of General Sessions for Florence County. The factual statement in the Solicitor's brief is that the indictment was for assault with intent to kill and the verdict was guilty of assault of a high and aggravated nature. Sentence was for one year at hard labor, whereupon the appeal followed.

The court is bound, as are the parties, by the agreed statement of facts appearing in the appeal record. None of the testimony is contained in the record. The statement follows:

"Sgt. Stewart, of the South Carolina Highway Patrol, and Patrolman Colin King were returning to Florence on Highway No. 51 on the evening of July 19, 1946, and when they had just passed Hyman, South Carolina, around 9:30 P. M., a truck, burning a spot light which they claimed was focused contrary to law, passed them. They immediately turned around and drove up beside the truck at which time Sgt. Stewart, who was on the right-hand side of the patrol car, flashed his flashlight in the truck. Sgt. Stewart and Patrolman King both testified that they blew a siren but the defendant, Otto Jones, and William Franklin denied this. Jones said he did not know who it was and thought he was being held up so he speeded up the truck. The patrolman testified that Jones turned to the left on the highway and to keep from being pushed off the highway, the patrol car had to draw back. They stated they tried again to move up even with the truck and again were pushed off the highway. At this time, Patrolman King said he saw the flash of a pistol shot fired from the driver's side of the truck and requested Sgt. Stewart to shoot at the tires of the truck in an endeavor to stop the truck. Sgt. Stewart then fired several shots attempting to hit the tires on the truck. The truck drove through Pamplico and out towards the river road and after passing through Pamplico the officers testified Sgt. Stewart fired several more times in an endeavor to puncture the tires of the truck. Sgt. Stewart, on cross examination, testified he saw no pistol shots fired from the truck. The truck drove into the yard of the home of Jones and Jones got out from the driver's side of the truck and Franklin got out on the other side and both ran. Patrolman King, who has only one leg, did not follow, but Sgt. Stewart ran in pursuit and testified that a shot was fired from the woods which came very close to him. He stumbled and was unable to follow the pursuit any further. The officers heard other shots fired from the woods. Sgt. Stewart then returned and word was sent to the Florence County Sheriff's office for help. Sheriff Clark of Flor-

ence and Deputies Truluck and Barnes came to their assistance. They were unable to locate either Jones or Franklin and the cars were driven away, but Sgt. Stewart with Deputies Truluck and Barnes remained at the house. The house was a tenant house with two doors opening on the front. The porch extended almost the length of the house with the exception of a break in the middle. The officers were at one end of the porch when they looked and, as the moon was bright, they saw the defendant Jones. Sgt. Stewart then approached him, identified himself and requested him to place himself under arrest. As he approached, he noticed that Jones had his right hand under his left armpit. When he got close, Jones pulled out his hand and Sgt. Stewart saw for the first time that Jones had a .45 automatic in his hand. Stewart immediately knocked the gun away from him and the gun went off at this time. Deputy Barnes had, in the meantime, got in back of Jones and when he covered him with his pistol, Jones surrendered. The officers stated that there was no scuffle or fighting at the time that Jones was placed under arrest but Jones stated that after the gun was knocked out of his hand he was severely beaten. Dr. James Pearce of Pamplico testified that a few weeks after this incident he treated Jones for pleurisy and Jones gave him the history of having been beaten by the officers. Dr. Pearce stated that there were many causes for pleurisy and a blow over the kidneys could have been the cause in this case. Franklin was not captured until the next day when he returned to the Jones house. Judge Grimball, on motion, directed a verdict of not guilty in favor of Franklin.

"Jones and Franklin both testified to the effect that they did not know that the car that approached them was occupied by officers and neither heard the siren. They stated that they were afraid and particularly after they heard pistol shots. They admitted running but denied trying to force the patrol car off the highway. They both denied shooting from the truck and Jones testified that Franklin never had the gun. Jones stated that he kept the gun in his truck to pro-

tect him in his job of logging and stated that while working he had killed three snakes the week prior to this incident. They both testified that they were doing logging for the Ingram Lumber Company. at Willow Creek, South Carolina. Jones also testified that after he had run into the woods, he realized for the first time that it might have been officers that were chasing him and it was then that he came out of · the woods so that if they were officers, he could give himself up. He testified further that the only shot fired that evening from his automatic was when it was knocked out of his hand by Sgt. Stewart. *On request the State advised that it would rely on the shot fired on the porch for conviction.*" (Emphasis added.)

It is gathered from the rather meager record that timely motion for directed verdict of not guilty was made and refused as to appellant. The first exception imputes error in such refusal and both appellant and the Solicitor argue in their respective briefs the question whether there was sufficient evidence of guilt relating to the single incident relied upon by the State to warrant submittal to the jury and support the conviction.

■ Citation of authority is unnecessary to justify the conclusion that the facts contained in the quoted statement disclose insufficient evidence of an assault by appellant upon the officers on the occasion on which the State relied for conviction. He stood in the nighttime on the porch of his home where they lay in wait for him. There is no evidence that he pointed his pistol at the officers or otherwise threatened them with it. It appears that it was discharged accidentally (and fortunately harmlessly) when it was struck from his hand by Officer Stewart. Verdict of not guilty as charged should have been directed.

■ There are exceptions to the instructions which have been considered because of their importance generally, although they are academic in this appeal. *Ashmore*

*v. Greater Greenville Sewer.District,* S. C., 44 S. E. (2d) 88. Only brief discussion of them is necessary.

The trial court's charge to the jury is susceptible of the meaning that an officer in whose presence a misdemeanor has been committed may arrest without warrant and prevent the escape of the offender by any means necessary, even to the extent of the use of a deadly weapon and the taking of his life. The following is taken from the instructions: "The State relies on the allegation in this case that that section of the Code (Sec. 1623, par. 10) has been violated which would be, if violated, a misdemeanor. If the misdemeanor were committed in the presence of the officers of the law, the officers then, under our law of South Carolina, had a right to arrest the operator of the automobile violating that statute, and says our Supreme Court, if the law officer had a right to make the arrest, the law officer had the right to use as much force as was necessary to accomplish the arrest, even if necessary to take the life of the person who committed the misdemeanor. Our Supreme Court has passed upon that in more than one case, in the following words, the amount of force which an officer may lawfully use in making an arrest is so much as is necessary to effect the arrest, even if it extends to the killing of the defendant. There is no rule of law in this state—there may be rules of law in other states—but there is no rule of law in this state in permitting an officer to make an arrest forbidding the officer using a deadly weapon in making the arrest, if the use of a deadly weapon is necessary."

This was at least misleading as applied to the facts presented by the testimony. It was subject to the construction which we have mentioned, that an officer may kill one attempting to escape from arrest for a misdemeanor. Such is not the law. It is better than one guilty of the commission of a misdemeanor escape than his life be forfeited or that he suffer serious bodily injury. The court apparently confused attempted escape with resistance to arrest, but the attendant rights of the officer are very different.

6 C. J. S., Arrest, § 13. 4 Am. Jur. 54, 56. Annotations: 4 Ann. Cas. 760; 51 L. R. A., N. S., 1180; 3 A. L. R. 1170; and 42 A. L. R. 1200.

Our own reports contain the clear authority of *State v. Sudduth,* 74 S. C. 498, 54 S. E. 1013, in which the strong opinion was by Mr. Justice Woods. There an officer was convicted of manslaughter for fatally shooting a fleeing violator of the liquor law, a misdemeanant as the present appellant was at worst. Here the officers were shooting at a vehicle occupied by one said to be guilty of a minor traffic regulation, who denied knowledge of the identity of the officers and thought them to be robbers from whom he was trying to escape. Citation of the *Sudduth case* and comparison of the facts of it with those now before the court should be condemnation enough of the conduct of the officers in the present case.

Reversed for entry of judgment of acquittal.

BAKER, CJ., and FISHBURNE, TAYLOR and OXNER, JJ., concur.